IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**GLENN WANE HAWKINS**                                                           **PLAINTIFF**

**VERSUS**                                            **CIVIL ACTION NO. 1:14-cv-402-JCG**

**DR. GLORIA PERRY, ET AL.**                                                     **RESPONDENT**

<u>**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
[56][60] MOTIONS FOR SUMMARY JUDGMENT**</u>

BEFORE THE COURT are two motions for summary judgment: one filed by Defendant Gloria Perry (ECF No. 56) and another filed by Defendants Ronald Woodall and Wexford Health Care[1] (ECF No. 60), each accompanied by supporting memoranda (ECF No. 57; ECF No. 61). Plaintiff Glenn Wane Hawkins filed responses in opposition to each motion (ECF No. 67; ECF No. 69), along with supporting memoranda (ECF No. 68; ECF No. 70) and a sworn affidavit (ECF No. 66). Having reviewed the submissions of the parties and the relevant law, the Court determines that Defendants' motions for summary judgment (ECF No. 56; ECF No. 60) should be GRANTED and Plaintiff's claims against Defendants Gloria Perry, Ronald Woodall, and Wexford Health Care should be dismissed with prejudice. Additionally, after conducting a *sua sponte* review pursuant to 28 U.S.C. § 1915A of Plaintiff's remaining claims against Defendant Christopher Epps, the Court determines that they should be dismissed with prejudice as well.

<u>I. BACKGROUND</u>

---

[1] Wexford Health Sources, Inc. is incorrectly identified in Plaintiff's Complaint as Wexford Health Care, but the parties never sought to correct the oversight, and therefore the docket was not corrected.

Plaintiff Glenn Wane Hawkins is an inmate in the custody of the Mississippi Department of Corrections (MDOC), currently incarcerated at South Mississippi Correctional Institute (SMCI) in Leakesville, Mississippi. On October 23, 2014, Hawkins filed his Complaint (ECF No. 1) against Defendants Gloria Perry, Christopher Epps, Ronald Woodall, and Wexford Health Care, alleging violations of his rights under the United States Constitution pursuant to 42 U.S.C. § 1983. He seeks ten million dollars in compensatory and punitive damages and "court ordered specified treatment." (ECF No. 1, at 4).

In his Complaint, Hawkins states that he has been suffering with a "cebaeceous [sic] cyst/abdominal abscess"[2] and skin infections of methicillin-resistant staphyclococcus aureus (MRSA), for which the recommended treatment is to irrigate the open wound, perform a skin graft, and "conduct hyperbaric chamber healing." *Id.* at 4. He further states that he has not received this treatment and that "[a]ntibiodics [sic] are cancealed [sic][,] necessary bandages [and] ointments are denied[,] and nurse assisted cleanings are often not carried out." *Id.* He argues that he "is consistently being deprived of adequate medical supplies when he is forced to re-dress his wound alone in an open bay zone among the other 99 offenders," in

---

[2] At the Omnibus hearing (which functioned as a hearing pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985)), Hawkins elaborated upon his medical condition:
> I was told by all medical personnel it was a staph infection, but it constitutes cysts and lesions. They will close up, swell up, and they will bust and drain with pus and blood and everything like that.
> ….
> I would have these lesions, these cysts, boils, whatever you want to call them, coming up, and, you know, being three different places across my abdomen, places across my back and other places.

(ECF No. 53, at 19). He later stated that his condition was diagnosed as "hidradenitis supperativa." *Id.* at 25.

violation of his Eighth Amendment rights to be free from cruel and unusual punishment. (ECF No. 2, at 2). Indeed, says Hawkins,

> At SMCI often bandages are only changed once per day by medical staff (if so ordered by Dr. Woodall). Many times offenders such as Hawkins is not called for cleaning and bandages late at night and forced to wait before during and after medical treatment for hours and hours (due to shortage of prison guards) when many times officers sit around on extended breaks rather than escort the offenders back out into the night and to their assigned buildings.

*Id.* Hawkins alleges that Defendants Perry and Woodall knew of the "risk of harm" posed by Hawkins' "serious medical condition," and their "inaction … violated a clearly established constitutional right." *Id.* at 6-7.

Defendants Perry, Woodall, and Wexford filed motions for summary judgment based upon the defenses of sovereign immunity and qualified immunity, and arguing that no violation of Hawkin's constitutional rights occurred. Dr. Gloria Perry is the Chief Medical Officer of the MDOC and was sued in both her official and individual capacities. (ECF No. 57, at 1). In her Motion for Summary Judgment, she argues (1) that she is entitled to sovereign immunity with regard to Plaintiff's claims against her in her official capacity, and (2) that she is entitled to qualified immunity with regard to Plaintiff's claims against her in her individual capacity. *Id.* at 3-9. Dr. Ronald Woodall is a "medical doctor employed by Wexford Health Sources," with which MDOC contracts for the provision of medical care to inmates housed at SMCI. (ECF No. 61, at 1). In the Motion for Summary Judgment filed by Woodall and Wexford, they argue that Plaintiff has not pleaded legally cognizable causes of action against them because (1) he "does not claim that Dr.

Woodall was intentionally treating him improperly or was deliberately treating him improperly," (2) "§ 1983 does not 'create supervisory or respondeat superior liability,'" and (3) he "has not identified any policy" of Wexford that "was the 'moving force' behind the [alleged] constitutional violation." *Id.* at 2, 8 (citations omitted). Defendants do not challenge Plaintiff's factual allegations but instead argue that they do not amount to constitutional violations because they simply indicate dissatisfaction or disagreement with medical care rather than the total absence of medical care. *See id.* at 2; (ECF No. 57, at 8).

Plaintiff filed objections to both motions for summary judgment. He asserts that Dr. Perry "was notified [of Dr. Woodall's neglect of Plaintiff] and therefore is responsible." (ECF No. 68, at 5). He also asserts that Dr. Woodall has "a long history" of providing "improper treatment," and that Dr. Woodall "deprived [Plaintiff of] medication and treatment recommended by another doctor." (ECF No. 70, at 2, 7).

## II. DISCUSSION

A. <u>Legal Standards</u>

  i. <u>Summary Judgment</u>

Summary Judgment is mandated against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party has the burden of proof at trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute of material

4

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment, the Court must construe "all facts and inferences in the light most favorable to the non-moving party." *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012).

The movant bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which they believe demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-25. If the movant carries this burden, the burden shifts to the non-moving party to show that summary judgment should not be granted. *Id.* at 324-25.

The Plaintiff may not rest upon mere allegations in his Complaint, but must set forth specific facts showing the existence of a genuine issue for trial. *Abarca v. Metro Transit Auth.*, 404 F.3d 938, 940 (5th Cir. 2005). In the absence of any proof, the Court will not assume that Plaintiff "could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

      ii.   <u>The Prison Litigation Reform Act</u>

Because Plaintiff is a prisoner pursuing a civil action seeking redress from government employees, the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321, H.R. 3019 (codified as amended in scattered titles and sections of the United States Code), applies and requires that this case be screened.

The PLRA provides that "the Court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a

defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see* 28 U.S.C. § 1915(e)(2)(B). Accordingly, the statute "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992).

### iii. Eleventh Amendment Sovereign Immunity

"The Eleventh Amendment prohibits a private citizen from bringing suit against a state in federal court unless the state consents." *Salinas v. Tex. Workforce Comm'n*, 573 F. App'x 370, 372 (5th Cir. 2014) (quoting *Daigle v. Gulf State Utils. Co.*, 794 F.2d 974, 980 (5th Cir. 1986)). "The Eleventh Amendment also 'generally precludes actions against state officers in their official capacities." *Id.* (quoting *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004)). However, an exception exists for "suits seeking prospective relief for violations of federal law against state officers in their official capacity." *Id.* (citing *Ex Parte Young*, 209 U.S. 123 (1908)).

### iv. Qualified Immunity and 42 U.S.C. § 1983

42 U.S.C. § 1983 prohibits the deprivation of any individual's constitutional rights under color of state law and provides for both monetary and injunctive relief. However, "[t]he doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would

have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Accordingly, a government official is entitled to immunity from suit unless (1) a plaintiff has made allegations sufficient to show a violation of a constitutional right, and (2) the right at issue was "clearly established" at the time of the official's alleged misconduct. *Id.* at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

> v. Eight Amendment Violations for Inadequate Medical Care

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."[3] *Helling v. McKinney,* 509 U.S. 25, 31 (1993). The amendment's protection against cruel and unusual punishment prohibits deprivations that are not specifically a part of a prison sentence, but are "suffered during imprisonment." *Wilson v. Seiter,* 501 U.S. 294, 297 (1991) (citing *Estelle v. Gamble,* 429 U.S. 97 (1976)). This protection requires prison officials to "provide humane conditions of confinement," which includes ensuring that inmates receive adequate medical care. *Farmer v. Brennan,* 511 U.S. 825, 832 (1994).

Determining the viability of a claim over conditions of confinement requires an inquiry into the defendant prison official's state of mind. *Wilson*, 501 U.S. at 302. Only where the prison official exhibits "deliberate indifference" towards a "substantial risk of serious harm" will an Eight Amendment violation be found. *Gobert v. Caldwell,* 463 F.3d 339, 345-46 (5th Cir. 2006). Thus, a prisoner must

---

[3] The Eighth Amendment is made applicable to the State of Mississippi and its agencies by virtue of the Due Process Clause of the Fourteenth Amendment. *Wilson v. Seiter,* 501 U.S. 294, 296–97 (1991).

prove (1) an "objective exposure to a substantial risk of serious harm," (2) the prison official's knowledge of that risk, and (3) the prison official's disregard for that risk. *Id.*

The Fifth Circuit has elaborated upon the deliberate indifference standard in the context of medical care:

> Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Furthermore, the decision whether to provide additional treatment 'is a classic example of a matter for medical judgment. A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.

*Id.* at 346 (citations and internal quotation marks omitted). "Deliberate indifference is an extremely high standard to meet." *Id.* (citing *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)).

B. <u>Analysis</u>

Defendants do not seem to dispute that Hawkin's medical condition posed a substantial health risk that could cause serious harm. However, Defendants deny that Hawkins has alleged facts that amount to a violation of his Eighth Amendment rights. Beginning with the Dr. Perry, the Court will address each defendant's summary judgment motion and Plaintiff's claims against each defendant.

    i.  <u>Dr. Gloria Perry</u>

MDOC is an arm of the State of Mississippi, and Dr. Perry, as Chief Medical Officer of MDOC, is therefore a state official. The State of Mississippi has not

waived sovereign immunity for lawsuits filed in federal court. *See* Miss. Code Ann. § 11-46-5(4) ("Nothing contained in this chapter shall be construed to waive the immunity of the state from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."). To the extent that Plaintiff seeks monetary damages, his claims against Dr. Perry in her official capacity are barred by sovereign immunity.

Plaintiff stated at the hearing that he is suing Dr. Perry because she is Chief Medical Officer of MDOC. (ECF No. 53, at 34). He argues that she was aware of his circumstances because he wrote her a letter (his ARP complaint, which seems to be from May 2014) and his family also separately mailed her a copy of the same.[4] *Id.* at 24, 34-35; (ECF No. 2-2, at 1); (ECF No. 68, at 2). However, he also conceded at his omnibus hearing that he has never met or spoken to Dr. Perry, does not know whether she received his letter, and never received a response from her. (ECF No. 53, at 30-34). By his own admission, he received medical care for his skin condition from several doctors – Dr. Woodall included – and knows nothing of the acts or omissions of Dr. Perry. *See id.* at 19-30. He simply assumed that Dr. Perry arranged for his medical appointments with doctors outside of MDOC. *See id.* at 23-24, 27-29.

Plaintiff's allegations most closely fit a theory of supervisory liability. However, such claims are not cognizable under § 1983. *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 468 (5th Cir. 2010). Individual officers can only be held liable "when the enforcement of a policy or practice results in a deprivation of federally protected

---

[4] At his omnibus hearing, he argued, "I would think that two times contacting her should be sufficient for what – I mean, she is the chief medical officer." (ECF No. 53, at 35).

9

rights." *Id.* (citations and internal quotation marks omitted). Plaintiff has not alleged facts establishing that Dr. Perry enforced a policy or practice that deprived Plaintiff of his Eighth Amendment rights, nor has he alleged facts sufficient to constitute her deliberate indifference to medical care of his skin condition. Because Plaintiff has failed to state facts amounting to a violation of his constitutional rights by Dr. Perry, Dr. Perry is entitled to qualified immunity. Therefore, Plaintiff's claims against Dr. Perry in her official and individual capacities must be dismissed.

      ii. Dr. Ronald Woodall

Plaintiff stated at his omnibus hearing that he does not think Dr. Woodall is intentionally mistreating him:

> THE COURT: Do you and Woodall – do y'all have like a – do you not like each other? Does Woodall have a personal vendetta? I mean, I know that sounds silly, but –
> PLAINTIFF HAWKINS: No, I don't think it does.
> THE COURT: You don't think he is like intentionally – intentionally making you go through this?
> PLAINTIFF HAWKINS: I don't think that it's intentional. But like I say, he's not taking the time to learn about this stuff. It's not his field. He hasn't taken the time to slow down just a little bit and read. Because I told him, I said, I've got all of this stuff on this hidradenitis. A nurse got it for me from the Mayo Clinic and gave it to me.

(ECF No. 53, at 31). Relying on information he "got from the Mayo Clinic that a nurse printed out for me at [the] 720 [unit at Central Mississippi Correctional Facility]" and his claim that Dr. Castillo – who Plaintiff saw at the 720 unit – told him he had "Hidradenitis Suppurativa" and would "[never] get the recommended treatment for this because it's too expensive," he argues that Dr. Woodall is providing constitutionally deficient medical treatment for his condition. *Id.* at 25,

10

30. Although he is reluctant to admit so, these arguments simply articulate a disagreement with the medical treatment that Dr. Woodall has provided to him.[5] He also argues that he sometimes suffered a delay in receiving care:

> You've got to put in a sick call to let them know that you've got an issue. So every time you put in a sick call, well, it might take ten days to see a nurse who's doing the triage. Well, by that time, the wound has already festered, busted open, drained, and gone back down.

*Id.* at 20.

Hawkins' medical records reflect – and he does not dispute – that he was seen by Dr. Woodall, other providers, and nurses at SMCI with some regularity from 2011-2014; was prescribed various antibiotics, antibiotic ointments, anti-inflammatory medications, as well as therapeutic shampoo; and received frequent wound care for his sores. *See* (ECF No. 65-3, at 85-110); (ECF No. 65-4, at 22-50, 83-93, 166-187); (ECF No. 65-5, at 24-27, 57-63, 68-90, 148-175, 179-200); (ECF No. 65-6, at 12-19, 24-35, 40-111, 142-166, 186-200); (ECF No. 65-7, at 1-29, 35-49, 66-70, 93-96). This treatment was all directed towards his skin condition and related infections. Plaintiff does not argue that Dr. Woodall misdiagnosed his medical conditions or that the treatment he prescribed was not intended to address his conditions. Moreover, it is not alleged that the occasional delays in receiving wound care – for what amounts to nearly a chronic condition – caused Plaintiff any substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993) ("[I]n order to maintain a viable claim for delayed medical treatment there must have

---

[5] After articulating these arguments, Hawkins made a point to say that he "does not now or ever assert that he is in anyway in mere disagreement of his medical treatment (alone) because as defendants argue this does not state an 8th Amend[ment] claim." (ECF No. 70, at 6).

11

been deliberate indifference, which results in harm."). He even explained away these delays, attributing them to conditions outside of Dr. Woodall's control, such as understaffing and dangerous conditions in the prison. *See* (ECF No. 53, at 19-21).

"Plaintiff has no constitutional right to the best medical treatment available." *Irby v. Cole*, No. 403CV141WHBJCS, 2006 WL 2827551 (S.D. Miss. Sept. 25, 2006) (citing *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978)). "A prisoner is not entitled to the treatment that judges might prefer, or medical treatment or therapy equivalent to that provided by Medicaid or Medicare." *Id.* (citing *Ruiz v. Estelle*, 679 F.2d 1115, 1149 (5th Cir. 1982)). Moreover, the Court is not in a position to second-guess the medical judgment of a trained physician. *Domino*, 239 F.3d at 756 (citing *Estelle*, 429 U.S. at 107). Because Plaintiff has failed to state facts amounting to a violation of his constitutional rights by Dr. Woodall, Dr. Woodall is entitled to qualified immunity. Therefore, Plaintiff's claims against Dr. Woodall in his official and individual capacities must be dismissed.

### iii. Wexford Health Sources

Plaintiff stated at his omnibus hearing that he is suing Wexford because "Wexford Health was in charge of the health system [and] Dr. Woodall is hired by them." (ECF No. 53, at 32). Plaintiff alleges no further involvement by Wexford in his treatment. This claim is plainly one for supervisory liability. Because no respondeat superior liability exists under § 1983, Plaintiff's claims against Wexford must be dismissed. *See Bustos*, 599 F.3d at 468.

### iv. Christopher Epps

Christopher Epps did not file a summary judgment motion and has yet to enter an appearance in this case. However, after conducting a *sua sponte* review of Hawkins' claims under 28 U.S.C. § 1915A, the Court concludes that his claims against Mr. Epps should be dismissed.

Plaintiff stated at his omnibus hearing that he is suing Christopher Epps because he was the Commissioner of MDOC. (ECF No. 53, at 32). Hawkins admits that he has never met Mr. Epps personally, but that Mr. Epps was aware of his situation because he sent him the same letter he sent to Dr. Perry. These claims perfectly mirror his claims against Dr. Perry, and his claims against Mr. Epps are likewise dismissed for the same reasons that his claims against Dr. Perry are dismissed. Mr. Epps is entitled to sovereign immunity with regard to claims against him in his official capacity, and he is entitled to qualified immunity with regard to claims against him in his personal capacity.

### III. CONCLUSION

Plaintiff Glenn Wane Hawkins has failed to allege that any of the named Defendants have infringed upon his Eighth Amendment protection from cruel and unusual punishment. Defendants' motions for summary judgment will therefore be granted.

Accordingly, **IT IS HEREBY ORDERED** that the Motion for Summary Judgment filed by Defendant Gloria Perry (ECF No. 56) and the Motion for Summary Judgment filed by Ronald Woodall and Wexford Health Care (ECF No.

60) are both **GRANTED**. His claims against Defendants Gloria Perry, Ronald Woodall, and Wexford Health Care are dismissed with prejudice.

    **IT IS FURTHER ORDERED** that Plaintiff's claims against Defendant Christopher Epps are dismissed with prejudice.

    **SO ORDERED AND ADJUDGED**, this the 31st day of August, 2016.

<u>*s/ John C. Gargiulo*</u>
JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE